UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP, and LABOR MANAGEMENT COOPERATION FUNDS,<br><br>Plaintiffs,<br><br>-against-<br><br>SYRACUSE FLOOR SYSTEMS, INC. and RETAILER FLOORING SOLUTIONS, INC.,<br><br>Defendant. | 18 CV _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and other applicable law, to collect delinquent employer contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and pursuant to 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## THE PARTIES

4. Plaintiffs Trustees of the Northeast Carpenters Health, Pension, Annuity, and Apprenticeship Funds ("ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 10 Corporate Park Drive, Suite A, Hopewell Junction, New York 12533.

5. Plaintiffs Trustees of the Northeast Carpenters Labor Management Cooperation Fund ("Labor Management Fund," and together with the ERISA Funds, the "Funds") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). The Labor Management Fund maintains its principal place of business at 10 Corporate Park Drive, Suite A, Hopewell Junction, New York 12533.

6. Defendant Syracuse Floor Systems, Inc. ("Syracuse") is and was a corporation organized under the laws of the State of New York. At relevant times, Syracuse was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Syracuse maintains a place of business at 203A Bagg Street, East Syracuse, New York 13057.

7. Defendant Retailer Flooring Solutions, Inc. ("Retailer") is and was a corporation organized under the laws of the State of Delaware, authorized to do business in the State of New York. At relevant times, Retailer was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an

-2-

employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Retailer maintains a place of business at 5611R Business Avenue, Cicero, New York 13039.

## BACKGROUND

**The Collective Bargaining Agreements**

8. The Northeast Regional Council of Carpenters (the "Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

9. At all times relevant hereto, Syracuse is and was a party to, or manifested an intention to be bound by a collective bargaining agreement (the "CBA") with the Union.

10. The CBA required Syracuse to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

11. In addition, the CBA further provides that Syracuse must make its books and records available to the Funds or their representatives in order to verify the number of hours of Covered Work performed by Syracuse's employees.

12. The Funds established an Employer Contribution Audit and Collection Policy (the "Collection Policy").

13. The Collection Policy provides that interest is calculated at the rate of 0.75% per month compounded.

14. The Collection Policy further provides that in addition to interest, the employer shall also be liable for liquidated damages of twenty percent (20%) of the delinquent contributions due and owing and all attorneys' fees and costs.

15. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes this Court to enforce the CBA. In addition, section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

**The Funds' Judgment against Syracuse**

16. In or about March 2013[1], the Funds commenced an action against Syracuse, and related entities Syracuse Commercial Floors, Inc., Commercial Floor Solutions, Inc., Syracuse Commercial Floors, Inc., Syracuse Harwood Wholesaler, Inc. and Syracuse Hardwoodfloor Gallery, Inc. ("Related Entities"), to recover contributions revealed by an audit of Syracuse and the Related Entities covering the period January 2009 through the present.

17. In or about March 2016, the Funds obtained a judgment against Syracuse and the Related Entities, jointly and severally, in the amount of $905,975.73.

18. To date, $905,975.73 remains outstanding on the Judgment.

**Alter Ego, Successor, and Single Employer Allegations**

---

[1] An Amended Complaint was filed in or about November 2015.

19. At relevant times, Defendants are and were alter egos and/or successors of each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

20. At all relevant times, Defendants had prior notice of each other's respective liabilities based upon the continuity of ownership and management between the entities.

21. Upon information and belief, Syracuse and Retailer are owned and operated by Brian Prusik.

22. Upon information and belief, at relevant times, Defendants share or have shared office staff and employ the same workers on their respective projects.

23. Upon information and belief, at relevant times, Defendants shared a telephone number. The telephone number associated with Syracuse is now the telephone number for the CFO of Retailer, Mindy Humphrey.

24. Upon information and belief, at relevant times, Defendants performed commercial flooring installation and related construction work.

25. Upon information and belief, Defendants failed to follow ordinary corporate formalities or keep separate records, and there was never an arm's length relationship between or among the Defendants.

26. Upon information and belief, Defendant Retailer was formed solely or primarily for the purpose of avoiding Defendant Syracuse's contractual and statutory obligations to the Funds, by performing work within the same trade and geographical jurisdiction of the Unions without conforming to the terms of the CBA.

27. Upon information and belief, Defendants are alter egos, successors, and/or predecessors of each other. Accordingly, each is subject to the terms of the CBAs entered into by Syracuse, and each is liable for each other's unpaid contributions to the Funds.

## FIRST CLAIM FOR RELIEF

28. Plaintiffs repeat the allegations set forth in paragraphs 1 through 27 above and incorporate them herein by reference.

29. At all relevant times, Syracuse was a party to, or manifested an intention to be bound by the CBA.

30. The CBA and the documents and instruments governing the Funds require Syracuse, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

31. At relevant times, Defendants were alter egos and/or successors of each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

32. By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and at all relevant times have been bound by the CBA and are jointly and severally liable for each other's unpaid contributions to the Funds.

33. Upon information and belief, Defendants dispute Plaintiffs' contention that Defendants are alter ego and/or successors.

34. An actual controversy has arisen and now exists between the parties with respect to the status of Defendants as alter egos and/or successors.

35. Accordingly, the Funds seek a judicial determination, pursuant to 28 U.S.C. §§2201 and 2202, that Defendants are alter egos or successors, that Defendants have at all

times been bound by the CBA, and that Defendants are jointly and severally liable for each other's unpaid contributions under the CBA.

## SECOND CLAIM FOR RELIEF

36. Plaintiffs repeat the allegations set forth in paragraphs 1 through 35 above and incorporate them herein by reference.

37. At relevant times, Syracuse is and was a party to, or manifested an intention to be bound by the CBA.

38. The CBA and the documents and instruments governing the Funds require Syracuse, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

39. In or about March 2013, the Funds commenced an action against Syracuse, and the Related Entities, to recover contributions revealed by an audit of Syracuse and the Related Entities covering the period January 2009 through the present.

40. On or about March 1, 2016, Plaintiffs obtained a judgment against Syracuse and the Related Entities, jointly and severally, in the amount of $905,975.73, of which $905,975.73 remains outstanding.

41. At relevant times, Defendants are and were alter egos or successors of each other.

42. By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and have at all times been bound by the CBA and are jointly and severally liable to the Funds for the balance of the Judgment, plus additional interest, reasonable attorneys' fees, expenses, and costs incurred by the Funds during the collection procedures.

## **THIRD CLAIM FOR RELIEF**

43. Plaintiffs repeat the allegations set forth in paragraphs 1 through 42 above and incorporate them herein by reference.

44. At relevant times, Syracuse is and was a party to, or manifested an intention to be bound by the CBA.

45. The CBA and the documents and instruments governing the Funds require Syracuse, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work and to submit to and comply with periodic payroll audits demanded by the Funds.

46. At relevant times, Defendants are and were alter egos or successors of each other.

47. By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and have at all times been bound by the CBA and are jointly and severally liable for each other's obligations thereunder.

48. Defendants contravened the CBA by failing to remit contributions to the Funds when they performed Covered Work within the meaning of the CBA.

49. Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the CBAs, and the documents and instruments governing the Funds, the Funds are entitled to an order directing Defendants to submit to an audit of Defendants' books and records covering the period August 1, 2015 through the present and to pay all delinquent contributions revealed by such audit, plus interest at the rate of ten percent (10%) per annum with respect to amounts due to the Funds, liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing, reasonable

attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) On Plaintiffs' First Claim for Relief, declaring that Defendants are alter egos and/or successors, that Defendants have all times been bound by the CBAs, and that Defendants are jointly and severally liable for each other's unpaid contributions to the Funds;

(2) On Plaintiffs' Second Claim for Relief, granting judgment to Plaintiffs against all Defendants, jointly and severally, for the balance owed on the Judgment in an amount to be determine at trial, plus interest, reasonable attorneys' fees, and other costs incurred during the collection procedures and litigation;

(3) On Plaintiffs' Third Claim for Relief, granting judgment to Plaintiffs against the Defendants, jointly and severally, for all delinquent benefits, directing Defendants to submit to an audit of Defendants' books and records covering the period August 1, 2015 through the present and to pay all delinquent contributions revealed by such audit, plus interest, liquidated damages, audit fees, reasonable attorneys' fees, and other costs incurred during the audit, collections procedures, and litigation; and

(4) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Ruel 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: New York, New York　　　Respectfully submitted,
　　　　January 31, 2018

**VIRGINIA & AMBINDER, LLP**

By:　___/s/ Nicole Marimon_____
Charles R. Virginia, Esq.
Nicole Marimon, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

*Attorneys for Plaintiffs*